RUTH LANKFORD *v.* MAYOR AND CITY COUNCIL OF FEDERALSBURG ET AL.

[No. 372, September Term, 1979.]

*Decided December 11, 1979.*

The cause was argued before MORTON, THOMPSON and WILNER, JJ.

*Amos I. Meyers* and *John A. Schruefer, Jr.,* with whom was *Frederick C. Malkus* on the brief, for appellant.

*Nevin E. Leese* for appellees.

MORTON, J., delivered the opinion of the Court.

This is an appeal in a workmen's compensation case from an order entered in the Circuit Court for Caroline County which affirmed the decision of the Workmen's Compensation Commission denying appellant's claim for compensation. The case was tried before Judge K. Thomas Everngam on an agreed statement of facts which is set forth below.

On October 4, 1970, Charles H. Lankford was injured in the course of his employment as a police officer for the Mayor and Council of Federalsburg, Maryland. The town's insurance carrier Hartford Accident & Indemnity Company thereafter paid him compensation for four years temporary total disability from the date of his accident until October 4, 1974. After a hearing and by an order filed July 8, 1977, the Workmen's Compensation Commission awarded him $35 per week compensation for twenty weeks for disfigurement and further compensation at the rate of $65 per week (beginning October 5, 1974) but not to exceed $30,355 allowable under "other cases" pursuant to Section 36 (3a) and (4a) of Article 101, for 70% industrial loss of use of the body as a result of injuries to his left arm, right arm, left leg and ribs.

Thereafter Charles H. Lankford was employed as a Deputy Sheriff of Caroline County, Maryland, and died as a result of an injury received in a melee at the Federalsburg Carnival on July 29, 1977. The insurer of the County Commissioners of Caroline County, the employer of Mr. Lankford, was the State

Accident Fund. In a case entitled Ruth Lankford (widow) of Charles H. Lankford (deceased) v. County Commissioners of Caroline County and State Accident Fund (Claim No. A 69-33-57), and after a hearing, Commissioner Edward A. Palamara passed an order dated August 30, 1978, making an award of compensation to the widow of $45,000 in weekly payments of $98 (plus further payments after $45,000 was paid if she continued to be wholly dependent) and $1,200 toward his funeral expenses.

After another hearing, Commissioner William R. Hughes passed an order dated December 21, 1978 (Claim No. A 49-87-39) on the issue:

"Is widow, Ruth Lankford, entitled to remainder of Award to deceased claimant, Charles H. Lankford."

Commissioner Hughes found that "the claim is abated by the compensable death" and closed the file and claim in the case by "Charles H. Lankford against Mayor & Council and Hartford Accident and Indemnity Company." Thereupon, the Mayor & Council of Federalsburg and its insurer, Hartford Accident & Indemnity, terminated the weekly compensation benefits to Charles H. Lankford under the "other cases" award to him dated July 8, 1977.

The single issue before this Court, as it was below, is whether the Commission properly found that the original compensation awarded to Mr. Lankford was abated or terminated by his "compensable death," thereby precluding his widow, the appellant, from receiving the remaining payments to which her husband would have been entitled but for his death.

Resolution of the issue requires a construction of Md. Code, art. 101, § 36 (4) (c), which reads:

"If any employee dies from any cause or causes not compensable under this article, the right to any compensation payable under this subsection and subsections (3) and (5), unpaid at the date of his death, shall survive to his surviving dependents as the Commission may determine, if there be such

surviving dependents, and if there be none such, then to his wife and children under eighteen years of age if there was, at the time of his death, a legal obligation on the part of said employee to support his wife, and if there was no such obligation, then to his children under eighteen if any, alone. This paragraph does not apply to the provisions of § 66 of this article."

In construing legislation we follow guidelines which have become time honored. A fundamental precept requires us to "carry out the real legislative intent and in ascertaining that intent the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." (Citations omitted. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406 (1976).

With respect to workmen's compensation legislation, we have an additional guidepost which is mandated by the provisions of the statute itself. Section 63 of art. 101 specifically provides:

"The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article; but this article shall be so interpreted and construed as to effectuate its general purpose."

The Court of Appeals and this Court have repeatedly stated that in order to carry out its benevolent purposes the Workmen's Compensation Act must be liberally construed in favor of the employee and his or her dependents within the limits its provisions will permit. *Bayshore Industries v. Ziats,* 232 Md. 167, 173-74 (1963); *W.C. & A.N. Miller Dev. Co. v. Honaker,* 40 Md. App. 185, 189 (1976); *Cline v. City of Baltimore,* 13 Md. App. 337, 344 (1971).

Bearing these statutory construction precepts in mind, we turn to the words of § 36 (4) (c) and it becomes at once

apparent that if we give them their ordinary and natural meaning, it was the purpose and intent of the legislature to award a deceased claimant's dependents the remainder of the compensation payments to which he would have been entitled had he lived. It is evident, however, that the award to the dependents would be mandated only if the deceased claimant "dies from any cause or causes not compensable under this article. . . ." It takes only a modicum of common sense and literacy to conclude that if, conversely, the deceased claimant dies from any cause or causes which are compensable under the article, that his dependents would not be entitled to the remainder of the unpaid payments under the original award.

In brief, it seems clear to us that the legislature intended to provide for a continuation of compensation payments due a claimant at the time of his death if, and only if, his death occurred from a non-compensable injury; and, conversely, that these payments would not survive if his death was compensable thus permitting his dependents to receive compensation payments as a result of his compensable death.

Here the record clearly shows that Mr. Lankford's death was not from any cause or causes "not compensable under this article," for his widow, as a result of his death, was awarded "compensation benefits at the rate of $98.00, payable weekly, beginning July 29, 1977 not to exceed the sum of $45,000.00, however, further payments shall be made to the dependent after the total amount of $45,000.00 has been paid if she continues to be wholly dependent . . . ."

We think it abundantly clear that a sound reading of § 36 (4) (c) evinces the intent of the legislature that where an original claimant's death results from any cause or causes which entitle his dependents to compensation payments under the Act, payments under the original award to which he would have been entitled but for his death do not survive and must be abated or terminated.

*Judgment affirmed; costs to be paid
by appellant.*